CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
AUG 29 2006
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| RUSSELL T. SEAMSTER, | ) | CASE NO. 4:06CV00006 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | By: B. Waugh Crigler |
| of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's January 28, 2003 claim for supplemental security income under the Social Security Act (Act), as amended, 42 U.S.C. § 1381, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will recommend that an order enter AFFIRMING the Commissioner's final decision, GRANTING judgment to the defendant and DISMISSING this action from the docket of the court.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff, who was 40 years old with a tenth grade education and with past relevant work as a construction laborer, had not engaged in substantial gainful activity since his alleged date of disability onset, November 28, 2002. (R. 16, 23.) The Law Judge further found that plaintiff has a seizure disorder, which is a severe impairment, though not severe enough

to meet or equal any listed impairment.[1] (R. 19-20, 23.) The Law Judge was of the view that plaintiff's allegations regarding his impairments and their impact on is ability to work were "not entirely credible." (R. 21, 23.) The Law Judge found that plaintiff was unlimited in his ability to lift/carry, sit, stand/walk, and push/pull with his upper and lower extremities, and that he retained the residual functional capacity to perform heavy work but should avoid climbing ladders, ropes, and scaffolds and hazards such as unprotected heights and moving machinery[2]. (R. 21, 23-24.) Plaintiff's past relevant work was light to heavy exertional work but due to his need for seizure precautions in the work setting, the Law Judge determined that plaintiff could not return to his past relevant work. (R. 22, 24.) By application of the Medical-Vocational Guidelines ("grids") to plaintiff's exertional limitations and by reference to testimony provided by the vocational expert (VE), the Law Judge concluded that the unskilled, light jobs of assembler, cashier, and hand packer were available to plaintiff. (R. 23, 24.) Thus, the Law Judge determined that he was not disabled under the Act.

Plaintiff appealed the Law Judge's decision to the Appeals Council, which found no basis in the record, or in the reasons plaintiff advanced on appeal, to review the Law Judge's decision. (R. 3-5.) Accordingly, the Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hayes v.*

---

[1]The Law Judge specifically noted that plaintiff did not have a severe mental, arthritic, or diabetic impairment. (R. 19.)

[2]The Law Judge concluded that no other postural, manipulative, visual, communicative, or environmental limitations existed. (R. 21.)

2

*Sullivan*, 907 F. 2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F. 2d 987 (4th Cir. 1984). The Regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. 20 C.F.R. §§ 404.1527 and 416.927; *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

In a brief filed in support of his motion for summary judgment, plaintiff initially claims that the Law Judge erred by failing to give proper weight to the opinion of his treating physician, Richard W. Davis, M.D. Specifically, plaintiff contends that the Law Judge failed to give proper weight to the Residual Functional Capacity Evaluation form dated March 6, 2003. (R. 163-166.) In that form Dr. Davis essentially opines that plaintiff's seizure disorder imposes marked limitations on his ability to perform substantial gainful activity. The Law Judge concluded that these opinions were entitled to "no weight," as Dr. Davis had only seen plaintiff one time prior to the date the preprinted form was completed, the findings contained in the form were based on plaintiff's subjective complaints rather than objective medical findings, and the opinions contained in the form were inconsistent with the doctor's own treating records, plaintiff's statements, and the record as a whole. (R. 17-18.) The undersigned concludes that the Law Judge's decision to give the opinions contained in the March 6, 2003 form "no weight" is supported by substantial evidence.

Initially, plaintiff points out that it is well-established that the opinion of a treating physician is entitled to great weight because he has treated the claimant "over a prolonged period of time." (Pl's brief, p. 17.) Although Dr. Davis ultimately became plaintiff's treating physician, it is clear that on the date Dr. Davis completed the form, March 6, 2003, he had not treated plaintiff for a

3

"prolonged period of time" and was not familiar with plaintiff or his seizure condition. First and foremost, Dr. Davis had only seen plaintiff *one* time prior to filling out the form. (R. 163.) In the form where asked whether plaintiff's seizure medications were at a therapeutic level, Dr. Davis conceded his lack of knowledge about plaintiff's condition and treatment by responding, "Only recent[ly] became my patient." (R. 165.) Also, in several of the questions posed in the form, Dr. Davis responded by quoting plaintiff rather providing a medical opinion. Moreover, Dr. Davis made no reference to any objective medical findings to support his opinions.

It is also clear to the undersigned that the March 6, 2003 form is inconsistent with Dr. Davis' office notes from the same day. (R. 129-130.) For instance, the form states that the only seizure medications plaintiff was taking were phenytoin and phenyobarbital, and that plaintiff had three seizures in the days just prior to March 6, 2003. (R. 163-164.) In contrast, Dr. Davis's office note from the same day provides that Tegretol was added to plaintiff's medicine regimen about a month prior to the evaluation, and that plaintiff had not experienced any seizures since being placed on Tegretol. (R. 129.)

Also, Dr. Davis' opinions contained in the March 6, 2003 form are inconsistent with other evidence of record. For instance, the March 6, 2003 form notes that plaintiff is compliant with taking his medication. (R. 164.) However, the April 7, 2003 office note provides that plaintiff is "non-compliant" with his seizure medications. (R. 129.) In the March 6, 2003 form, Dr. Davis quotes plaintiff as stating "I can't do nothing" following a seizure. (R. 164.) In contrast, in his Daily Activities Questionnaire, plaintiff remarked that his condition had not caused any changes in his daily routine. (R. 111.)

Plaintiff argues that the Law Judge "irrationally disregarded" Dr. Davis' opinions contained in the March 6, 2003 form because these opinions are substantiated by the treatment records of his

4

previous treating physician, Robert H. Goodnight, M.D. (Pl's brief, p. 19.) For instance, plaintiff contends the fact that Dr. Goodnight prescribed phenobarbital, purportedly a "serious drug[]," establishes that he suffers from "significant seizures." (Pl's Brief, p. 19.) However, plaintiff's argument that phenobarbital is a "serious" drug, and the fact that it was prescribed by Dr. Goodnight establishes the severity of his condition, is a medical opinion not a legal argument supported by the record.

Next, plaintiff argues that the Law Judge erred by failing to include the limitations as stated in the March 6, 2003 form in the hypothetical presented to the VE. The undersigned disagrees. As noted above, the Law Judge's decision to discredit Dr. Davis' opinions contained in the March 6, 2003 form is supported by substantial evidence. That the limitations expressed by Dr. Davis were not offered for consideration by the VE, at worst is harmless error.

Plaintiff contends that the Law Judge erred by failing to note side effects of plaintiff's medication in the hypothetical presented to the VE.[3] Plaintiff refers to Dr. Davis' office noted dated March 18, 2004. (R. 182.) On that date, plaintiff complained to Dr. Davis that he was experiencing dizziness, which Dr. Davis felt was caused by the Tegretol. Plaintiff reported that he had reduced the amount of Tegretol he was taking and had received some relief. The undersigned notes that Dr. Davis' records contain no prior or subsequent notations to suggest that plaintiff's medications caused him to experience significant side effects which warranted inclusion in the hypothetical limitation offered the VE. Thus, the Law Judge did not err in failing to include medication side effects in the hypothetical presented to the VE.

---

[3] The undersigned notes that the hypothetical given by plaintiff's counsel did *not* include the purported significant side effects that he contends the Law Judge erred by failing to include. (R. 37.)

5

Plaintiff argues that the Law Judge erred by failing to consider that his seizure disorder would cause him to miss approximately four days of work per month when making his residual functional capacity (RFC) determination. Although plaintiff contends that "all of the evidence" supports a finding that he likely would miss approximately four days of work per month, he has failed to advance a single piece of evidence to support this argument nor does the court's review of the record disclose such. (Pl's brief, p. 23.) Thus, the Law Judge did not err in failing to include this limitation in his RFC determination.

Plaintiff also contends that the Law Judge's RFC failed to include the fact that he suffers a low cognitive ability. Plaintiff primarily refers to an evaluation performed on January 9, 2004 by Blanche Williams, Ph.D.[4] (R. 177-178.) In that evaluation, Williams provisionally opined that plaintiff suffered from mild mental retardation[5] or cognitive disorder NOS, and that his cognitive limitations would impact his ability to perform substantial gainful activity. (R. 178.) The Law Judge discredited Williams' findings on the basis that they were inconsistent with plaintiff's work history, plaintiff's academic performance, and the record as a whole. (R. 19.) The Law Judge also pointed out that prior to Williams' evaluation, neither plaintiff nor his counsel had ever suggested he suffered any diminished mental capacity.

Plaintiff's argument that he has limited cognitive abilities which impact his ability to perform substantial gainful activity is inconsistent with the record. For instance, plaintiff argues that

---

[4]Throughout the brief filed in support of his motion for summary judgment, plaintiff mistakenly refers to *Blanche* Williams as *Bernice* Williams.

[5]Williams noted that her opinion that plaintiff was mildly retarded was dependent upon plaintiff's historical records, and that if the historical records did not support a diagnosis of mental retardation, a diagnosis of cognitive disorder NOS would be more appropriate. (R. 178.)

6

the evidence is "uncontroverted" that his mental capacity is so diminished that he cannot read. (Pl's brief, p. 24.) However, the record demonstrates that plaintiff *can* read. (R. 93, 177.) Next, plaintiff argues that he dropped out of school in the tenth grade as a result of his low cognitive ability, yet plaintiff reported that he dropped out of school because of his seizure disorder and never attended special education classes. (R. 29, 90, 177.) In short, there is no evidence to support a finding that plaintiff's decision to drop out of school was related to a limited cognitive ability.

Plaintiff also advances a number of arguments to support his contention that he suffers a severe mental impairment. First, he points out that he still resides with his parents, and he argues that this gives rise to the implication that he is not "mentally normal." (Pl's Brief, p. 24.) However, the record reveals that plaintiff prepares his own meals and does his own shopping.[6] (R. 112.) Also, plaintiff argues that the only jobs he held were "simple," which he claims shows that he has limited cognitive abilities. (Pl's brief, p. 25.) However, according to plaintiff's own assessment, the job he held the longest required him to use machines, tools or equipment; required him to possess technical knowledge or skills; and involved writing, completing reports or similar such duties. (R. 85.) Finally, the Commissioner's record evaluator, William Hirschman, Ph.D., found that plaintiff had no medically determinable mental impairment. (R. 144-157.) Thus, the Law Judge's decision to discredit Williams' opinion that plaintiff's cognitive abilities substantially impact his ability to perform substantial gainful activity is supported by substantial evidence.

Finally, plaintiff argues that the Law Judge erred when he failed to find him disabled under Listing 12.05C. Evidence by plaintiff concerning mental retardation presented to the Law Judge

---

[6]Based on the record as a whole, it seems more plausible to believe that plaintiff lives with his parents because, as he stated, he has "[n]o money." (R. 112.)

after the hearing but before his decision does show IQ scores ranging between 61 and 64.[7] (R. 177.) However, as pointed out by the Law Judge, these scores are not accompanied by any other evidence demonstrating that plaintiff had suffered mental retardation initially manifesting itself during the "developmental period" under the Regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In fact, there was some evidence to the contrary showing that plaintiff attended school until the tenth grade and never required special education classes. (R. 90.) Moreover, there is evidence in the record to suggest that plaintiff's daily activities allowed him to function with a degree of "independence, appropriateness, effectiveness, and sustainability" which could lead an Administrative trier of fact to determine that plaintiff was capable of participating in and initiating in gainful activities.[8] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(1).

The burden was on the plaintiff to produce at least *prima facie* evidence that the severity of his mental impairment (intellectual function) met or was equal to the requirements of the Listings. The evidence tendered to the Law Judge after the hearing and before his decision, when considered in light of all the other evidence, does not necessarily rise to that level. In other words, the Law Judge's resolution of the inconsistencies found in those portions of the evidence is consistent with the Commissioner's Regulations and is supported by the substantial evidence in this case.

For these reasons, it is RECOMMENDED that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment and DISMISSING this case from the docket of the court.

---

[7] Williams, the clinical psychologist who evaluated plaintiff after the hearing but before the Law Judge issued his decision, only offered a provisional diagnosis of mental retardation, not a definite one. (R. 178.)

[8] Based upon the then extant record, a State Agency Evaluator concluded that plaintiff suffered no medically determinable mental impairment. (R. 144-157.)

8

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

8/29/06
Date

9

Case 4:06-cv-00006-JLK-BWC   Document 17   Filed 08/29/06   Page 9 of 9   Pageid#: 84